# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENVIRONMENTAL RESEARCH CENTER,<br><br>                           Plaintiff,<br>vs.<br><br>TECHNICAL LABORATORIES, INC.,<br><br>                           Defendant. | CASE NO. 11cv2096 JM(BGS)<br><br>ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION |

Defendant Technical Laboratories, Inc. ("Technical") moves to dismiss the complaint for lack of personal jurisdiction or, alternatively, to dismiss for failure to state a claim and to strike the prayer for punitive damages. Plaintiff Environmental Research Center ("ERC") opposes all motions. Pursuant to Local Rule 7.1(d)(1), this matter is appropriate for decision without oral argument. For the reasons set forth below, the court grants the motion to dismiss for lack of personal jurisdiction and denies as moot all other pending motions. The Clerk of Court is instructed to close the file.

## BACKGROUND

On September 12, 2011Technical, incorporated under the laws of the State of Tennessee, with its principal place of business in Tennessee, removed this action, based upon diversity jurisdiction, from the Superior Court of the State of California, County of San Diego. (Notice of Removal ¶¶6-9). ERC is a non-profit corporation incorporated in the State of California with its principal place of business in California. Technical moves, pursuant to Fed.R.Civ.P. 12(b)(2), to dismiss the complaint

1   for lack of personal jurisdiction or, alternatively, to dismiss the second and third causes of action for
2   fraud and negligent misrepresentation, respectively, and to strike the prayer for punitive damages.

3         Th First Amended Complaint ("FAC"), filed on August 10, 2011, alleges six claims for (1)
4   breach of contract; (2) fraud; (3) negligent misrepresentation; (4) breach of the covenant of good faith
5   and fair dealing; (5) general negligence; and (6) professional negligence. (FAC at p.1). In broad
6   brush, ERC's claims arise out of the contractual relationship between the parties. On March 17, 2010,
7   the parties entered into an oral contract whereby Technical would provide laboratory testing services
8   of ingestible products ("Products") provided by ERC in exchange for certain fees. The majority of
9   laboratory tests were conducted for the purpose of determining the amount of lead or arsenic in the
10  Products. ERC is in the business of using the results provided by Technical "to determine if any
11  amounts of the Chemicals found in the Products were at levels above those allowed under California's
12  Proposition 65." (FAC ¶9). In the event the Products were determined to be not in compliance with
13  Proposition 65, ERC would then facilitate the bringing of a legal action pursuant to Proposition 65.
14  In reliance upon the laboratory testing, ERC hired staff, leased or purchased office space, retained
15  legal counsel, and served Notices of Violation against companies determined to be in violation of
16  Proposition 65. (FAC ¶12).

17        The parties allegedly continued their contractual arrangement from March 17, 2010 through
18  about June 23, 2010. (FAC ¶11). On July 9, 2010 ERC first learned that there could be a problem
19  with Technical's test results. ERC made inquiry and received further assurances of confidence in the
20  laboratory results from Technical. ERC conducted further testing of the Products by other laboratories
21  and discovered that Technical "breached the contract because [the] test results on a large number of
22  the Products were inaccurate, faulty, and unreliable." (FAC ¶13).

23        ERC alleges that it has been damaged in the amount of $1,250,000 and seeks punitive and
24  exemplary damages related to the fraud cause of action.

25  **DISCUSSION**

26  **Personal Jurisdiction**

27        Pursuant to Rule 12(b)(2), a court may dismiss a suit for "lack of jurisdiction over the person."
28  Fed.R.Civ.P. 12(b)(2). The court may "exercise personal jurisdiction over a non-resident if

jurisdiction is proper under California's long-arm statute and if that exercise accords with federal constitutional due process principles." <u>Fireman's Fund Ins. Co. v. National Bank of Cooperatives</u>, 103 F.3d 888, 893 (9th Cir. 1996). As the Ninth Circuit has explained:

> California's long-arm statute authorizes the court to exercise personal jurisdiction over a non-resident defendant on any basis not inconsistent with the California or federal Constitution. Cal.Code Civ. Proc. § 410.10. The statutory and constitutional requirements therefore merge into a single due process test.

<u>Id</u>. at 893. "Due process requires only that . . . [the defendant] have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945). Where the court does not conduct an evidentiary hearing, a plaintiff need only establish a prima facie case of personal jurisdiction. <u>Sher v. Johnson</u>, 911 F.2d 1357, 1361 (9th Cir. 1990).

On a motion to dismiss for lack of personal jurisdiction, the party seeking to invoke the court's jurisdiction bears the burden of establishing contacts by the non-resident defendant sufficient to establish personal jurisdiction. <u>WNS, Inc. v. Farrow</u>, 884 F.2d 200, 203 (9th Cir. 1989).

> [O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists.

<u>Id</u>. If the matter proceeds to trial, plaintiff must prove the jurisdictional facts by a preponderance of the evidence. <u>Id</u>.

There are two types of personal jurisdiction: general and specific. "General personal jurisdiction, which enables a court to hear cases unrelated to the defendant's forum activities, exists if the defendant has 'substantial' or 'continuous and systematic' contacts with the forum state." <u>Fields v. Sedgwick Associated Risks, Ltd.</u>, 796 F.2d 299 (9th Cir.1986). Specific jurisdiction allows the court to exercise jurisdiction over a defendant whose forum-related acts gave rise to the action before the court. <u>Id.</u>

The Ninth Circuit applies a three-part test to determine whether specific personal jurisdiction comports with due process: "(1) the defendant must have done some act purposely to avail himself of the privilege of conducting activities in the forum; (2) the claim must arise out of the defendant's

1  forum-related activities; and (3) the exercise of jurisdiction must be reasonable." Sedgwick, 796 F.2d
2  at 302; Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977).  Where the
3  defendant presents "a compelling case that jurisdiction would be unreasonable," there is no need to
4  address the first two prongs of the test. Id. at 302.  On the other hand, "[o]nce purposeful availment
5  has been established, the forum's exercise of jurisdiction is presumptively reasonable.  To rebut that
6  presumption, a defendant must present a compelling case that the exercise of jurisdiction would, in
7  fact, be unreasonable." Roth v. Garcia Marquez, 942 F.2d 617, 621-22 (9th Cir.1991).  The
8  purposeful availment prong prevents defendants from being haled into a jurisdiction through
9  "random," "fortuitous," or "attenuated" contacts. Terracom v. Valley Nat. Bank, 49 F.3d 555, 560
10 (9th Cir. 1995).  If the plaintiff satisfies both of the first two prongs, the burden shifts to the defendant
11 to establish that the exercise of jurisdiction would not be reasonable. Burger King Corp. v.
12 Rudzewicz, 471 U.S. 475, 476-78 (1985).

   The court considers the following factors to determine the reasonableness of the district court's exercise of personal jurisdiction:

   (1) the extent of defendant's purposeful interjection into the forum state's affairs;

   (2) the burden on defendant of defending in the forum;

   (3) the extent of conflict with the sovereign of the defendant's state;

   (4) the forum state's interest in adjudicating the dispute;

   (5) the most efficient judicial resolution of the controversy;

   (6) the importance of the forum to plaintiff's interest in convenient and effective   relief; and

   (7) the existence of an alternative forum.

See Terracom, 49 F.3d at 561.  The court balances all factors, recognizing that none of the factors is dispositive in itself. Id.

   As ERC asserts specific, but not general, jurisdiction over Technical, each element is discussed in turn.

   Purposeful Availment

   The Ninth Circuit has refined this prong to mean that the defendant has either (1) "purposefully availed" itself of the privilege of conducting activities in the forum, or (2) "purposefully directed" its

activities toward the forum. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). While the phrase "purposeful availment" is sometimes used so as to include both purposeful availment and purposeful direction, "availment and direction are, in fact, two distinct concepts." Id. Courts typically employ the "purposeful availment" prong in contract cases, and the "purposeful direction" analysis in tort cases. Yahoo! Inc. v. La Lingue Contre Le Racisme et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006). Therefore, as this case sounds primarily in contract, ERC must establish that Technical purposefully availed itself of the privilege of conducting activities in California.

The "purposeful availment" prong is satisfied when the defendant is considered to have availed itself of the privilege of doing business in the forum state, or where the defendant took some action in the state, such as executing or performing a contract. Id. The United States Supreme Court has ruled that a nonresident defendant does not purposefully avail itself of a forum merely by entering into a contract with a forum resident. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985). Instead, courts need to evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract" to determine purposeful availment. Id. at 479.

The court concludes that ERC fails to establish that Technical purposefully availed itself of the privilege of doing business in California. Technical maintains no presence in California. Technical operates its business out of its office located in Chattanooga, Tennessee. (Cain Decl. ¶3). Technical has never maintained offices in California, does not have any employees in California, does not advertise in California, does not have a website, does not maintain any telephone listing or mailing address in California, and has never owed any asset located in California. (Cain Decl. ¶¶4-9). Technical advertises its services in the local yellow pages in Chattanooga, Tennessee. (Cain Decl. ¶6). All in-person negotiations of the business relationship between ERC and Technical occurred in Tennessee. (Cain Decl. ¶¶11-12). The Executive Director of ERC, Chris Heptinstall, a resident of the State of Georgia, traveled to Chattanooga to meet with Lewis Cain, the president of Technical. The parties negotiated their contract in Chattanooga. (Cain Decl. ¶11-12). All laboratory testing was to be performed in Tennessee. Id. The laboratory results were emailed to Mr. Heptinstall and copies were mailed to ERC in California. (Heptinstall Decl. ¶7).

1    ERC argues that Technical purposefully directed its activities toward ERC, a California
2 company. Technical knew that ERC would use the test results in prosecuting legal actions in
3 California for the alleged violation of California Proposition 65, and that ERC mailed the test results
4 for 489 Products to ERC in California. (Heptinstall Decl. ¶5-7). The court concludes that the
5 identified contacts are minimal, too attenuated, and fail to establish either that Technical purposefully
6 availed itself of the privilege of doing business in California or even that Technical purposefully
7 directed its activities to the State of California. The parties negotiated their contractual relationship
8 exclusively in Tennessee, all work to be performed by Technical under the contract was to be
9 conducted in Tennessee, and to the extent Technical failed to perform under the contract, such conduct
10 occurred in Tennessee, not California.

11    The fact that Technical knew that the laboratory results would be used for litigation purposes
12 in California, and presumably all other states with comparable legislation to Proposition 65, is
13 insufficient to establish purposeful availment. ERC also places great weight on the mailing of the
14 laboratory reports to ERC in California. These incidental activities are simply insufficient to establish
15 that Technical purposefully availed itself of the privilege of doing business in California and do not
16 weigh in ERC's favor as the "ordinary 'use of the mails, telephone, or other international
17 communication simply do not qualify as purposeful activity invoking the benefits and protection of
18 the [forum] state.'" Roth v. Garcia Marquez, 942 F.2d 617, 622 (9th Cir.1991) (quoting Peterson v.
19 Kennedy, 771 F.2d 1244, 1262 (9th Cir.1985)).

20    In sum, the purposeful availment prong strongly weighs against the exercise of personal
21 jurisdiction over Technical.

22    The Relatedness of the Claim and Contact

23    The second prong to establish specific personal jurisdiction analyzes whether the claim arises
24 from the defendant's forum-related activities. Sedgwick, 796 F.2d at 302. Here, the only identified
25 forum-related activities consist of the mailing of the laboratory results to ERC in California. ERC's
26 claims arise, not out of this activity, but out of the allegedly inaccurate information provided by
27 Technical about the lead content and arsenic levels in Products provided by ERC. The contract was
28 negotiated in Tennessee, executed in Tennessee, and called for performance in the State of Tennessee.

1  The court concludes that ERC fails to sufficiently show the relatedness of its claim to forum-related
2  contacts.
3       In sum, this prong is not satisfied.
4       <u>Reasonableness of the Exercise of Personal Jurisdiction</u>
5       The touchstone for the exercise of personal jurisdiction over an out-of-state defendant is that
6  it must be reasonable "such that the maintenance of the suit does not offend 'traditional notions of fair
7  play and substantial justice.'"  <u>International Shoe</u>, 326 U.S. at 316.  As Technical lacks minimum
8  contacts with California, the exercise of personal jurisdiction over Technical is unreasonable and the
9  court need not address the factors identified in <u>Terracom</u>, 49 F.3d 555.[1]
10      In sum, the court grants the motion to dismiss the complaint without prejudice for lack of
11 personal jurisdiction.  All other pending motions are denied as moot.  The Clerk of Court is instructed
12 to close the file.
13 **IT IS SO ORDERED.**
14 DATED:  October 24, 2011
15 
16                                      Hon. Jeffrey T. Miller
                                     United States District Judge
17 
18 cc:        All parties

---

[1] The court notes that the most important reasonableness factor, the degree of Technical's purposeful interjection into California, <u>see</u> <u>Terracom</u>, 49 F.3d at 561, is minimal and too attenuated to support a finding in favor of personal jurisdiction.